SAUNDERS, *et ux. vs.* SIMPSON, *et ux.*

APPEAL from a decree of the Court of Chancery *dismissing* the bill of complaint. The bill filed by the present appellants, on the 15th of November 1797, was for a specific performance of the following agreement, executed on the 28th of December 1777, by *William Andrew,* deceased, viz. "*Baltimore* county, to wit. This agreement witnesseth, that whereas I, *William Andrew,* of the said county, did engage and promise to give unto my daughter, *Elizabeth Saunders,* on or before her marriage with Mr. *Robert Saunders,* eight or nine hundred acres of land; and three or four negroes, which land hath since been recovered of me, so that I cannot give her that land I promised; and I, the said *William Andrew,* have now settled the said *Robert,* and *Elizabeth* his wife, on my *Bush River* plantation, called *Jones' Inheritance,* containing three hundred and ninety-six acres, more or less, and also a tract called *Smith's Discovery* thereto adjoining, containing seventy-seven acres, more or less, and do hereby now assign *William Robinson's* bond for the conveying of said last mentioned tract, unto my said daughter *Elizabeth,* her heirs and assigns, and all the estate I can or may claim thereon and thereby, which lands I mean to give her in lieu of the lands so promised to her as aforesaid, which the said *Robert* and *Elizabeth* do now agree to take. And the said *Robert* hath lent and advanced me at several times divers sums of money—Now I, the said *William Andrew,* as well to perform my said promise as aforesaid made, as for the money advanced as aforesaid, and for divers other good causes moving me towards my said daughter *Elizabeth,* do now agree and promise never to remove my said daughter, nor her husband, from the said lands, but they, and each of them, shall and may have and hold the said lands under this agreement, from the date hereof; and I do promise for me, and my heirs, to give, convey, and perfect her title and right to the said lands, I mean to my said daughter, her heirs and assigns, either by my last will, or by deed duly executed, at the end of a lease which I heretofore gave them, so that my said daughter may peaceably possess and enjoy said lands, and her heirs, for ever. In witness

A specific performance of a bond for the conveying of lands, executed in 1777 by a father, in favour of his daughter, decreed, on a bill filed in 1797, although strongly contested on the ground that the bond was never executed, or if executed, that it was obtained by fraud. An equitable title in the defendant to lands, will not prevent a recovery against him in an action of ejectment brought by a person having the legal title. (*note*)

whereof I have hereto set my hand and seal this 28th day of December 1777.

Sealed and delivered      *Wm. Andrew,* (L. S.)
in presence of
*Abraham Andrew,*
*Averilla Andrew,*
*Priscilla Colvin.*"

The bill stated, that *Abraham Andrew,* one of the subscribing witnesses to the agreement, was the eldest son and heir at law of *William Andrew,* and that *Averilla Andrew* and *Priscilla Colvin,* were two of his daughters. That *William Andrew* died on or about the 1st of February 1783, having first duly made and executed his last will and testament, by which, after devising a few inconsiderable legacies to his children by his first wife, (one of whom was *Elizabeth,* one of the complainants,) he devised all the rest and residue of his estate to the daughter by his second wife, by the name of *Elizabeth Durbin William Andrew,* which second wife had been the house-keeper for *William Andrew,* and by him kept after he separated from, and during the life of, his first wife, and whom he intermarried with after the death of his first wife, having had issue one daughter, *Elizabeth Durbin William Andrew,* who hath since intermarried with *John Simpson.* That *Simpson,* and wife, claiming the premises by virtue of the will, brought an ejectment in the general court against the complainant, *Saunders,* and recovered judgment for the possession of the same, notwithstanding they knew he claimed the same under the above mentioned agreement. That the complainant not having any other except an equitable interest in the lands, was unable to defend the possession thereof at law, and was obliged to suffer a judgment to be entered against him, and seek his remedy in this court. *(a.)*

*(a)* In the trial of the ejectment referred to, brought by *Simpson et ux. Lessee vs Saunders,* in the general court at October term 1796, for *Smith's Discovery* and *Jones's Inheritance,* the plaintiff proved, that *William Andrew* being seized in fee simple of *Jones's Inheritance,* devised the same to the wife of *Simpson,* one of the lessors of the plaintiff. The defendant then produced the agreement, or instrument of writing, purporting to have been executed by *Andrew,* as set forth in the context, and prayed the court to direct the jury, that if they should be of opinion, from evidence which might be offered, that the said instrument of writing was duly executed, then the effect of the instrument was sufficient to entitle the defendant to their verdict for the tract of

That *Abraham Andrew* and *Averilla Andrew*, two of the witnesses to the agreement, arc since dead, and the complainants were in danger of losing their proof to the execution of the said instrument of writing. *Prayer*, for *subpena*, &c. and that *Simpson* and wife might be compelled to convey the premises in fee unto *Elizabeth*, one of the complainants, and that testimony might be taken and recorded in order to the perpetuating thereof, &c. Also prayer for an *injunction* against proceedings at law on the judgment in ejectment. *Subpena* and *injunction* issued accordingly; and a commission issued *de bene esse* for taking testimony.

The *answers* of the defendants stated, that *Saunders* held the lands mentioned in the bill, during the life-time of *Andrew*, as a tenant, and that the same were never sold, or contracted to be sold by him to the complainants, or either of them, and that the writing, or bond of conveyance, in the bill mentioned, was never executed by *Andrew*, but is a forgery. That *Andrew* devised the land to the defendant, *Elizabeth*.

Much *testimony* was taken under the several commissions which issued for that purpose, and the several exhibits proved.

*Exhibit E.* Is a letter dated *Middle River Neck*, October 20, 1773, from *William Andrew* to *Robert Saunders*, then of *Queen-Anne's* county, viz. "Daughter *Betsey* has been talking to me about living over here, as she wants to come back, and if you will come over again, you may go to *Bush River* plantation, on halves, for seven years, and then the place shall be hers instead of the land *Bond* has recovered against me."

*Exhibit R.* Is a letter from *William Andrew* to *Robert Saunders*, without date, but is in answer to one from the latter to the former dated the 8th of December 1781.

land called *Jones's Inheritance*. But the defendant did not offer any evidence to prove the execution of the said writing.

GoldsBorough, Ch. J. (*Chase*, J. absent, *Duvall*, J. concurred.) The court are of opinion, that the instrument of writing produced, even though the same should have been duly executed, is not of effect to bar the plaintiff's recovery of the land mentioned. Verdict, guilty as to *Jones's Inheritance*, and not guilty as to *Smith's Discovery*. Judgment on the verdict; from which the defendant appealed to the court of appeals, where the judgment was *affirmed* at November term 1737.

*Key* and *Winchester*, for the plaintiff and appellee.

*Martin*, (Attorney General,) and *Hollingsworth*, for the defendant and appellant.

1807.

Saunders
vs
Simpson

"As to what you mentioned by *W. Chambers* concerning the company's land, if it runs as you say *(a)*, you had better buy it, as I have no money to spare at this time. I think you may afford to buy that bit; and if you will, I will·be up and be your security."

*Exhibit X.* Is a bond dated the 18th of July 1800, executed by *John Simpson* to *John Colvin*, and conditioned for the conveyance to *Colvin* of 75 acres of land out of *Jones's Inheritance* and *Smith's Discovery*, if ever they should be recovered into the possession of *Simpson*.

*Exhibit Z.* Is a letter from *Simpson* to *Colvin*, without date, and is as follows: "I have received two letters from you, the first I did not understand, but the second explained your meaning fully, which is, you will have money from me at any rate. First you say, the bond is not valid, now you threaten me with the sale of it. You tell me *Hammond* and I are in collusion. I tell you it is more probable that he and you are in collusion. Was not every thing that was done about that business at the particular request of you and your mother? And pray how is my interest connected with *Hammond's?* Exactly in the same way that I am connected with you, and every other person who has ever done any thing for me in *Maryland*, by paying an extravagant price for it all, or obligating myself so to do. You ask, if I expect to keep the bond until it becomes due, that I deceive myself. In one thing I am sure I am not deceived, that I shall not pay it twice, and I do not conceive it will be more expensive to pay it to another than to you. But you seem to think I must pay it to you, whether I will or not—In this let me tell you, you deceive yourself, and grossly too. You seem to think I cannot do without your mother's testimony, and that it is of essential importance to me. In this you are wrong. You never knew for what purpose I wanted her testimony, nor does she understand it herself, neither would I have told any of you, but it seems necessary to inform you to prevent you running yourselves into infamy, and such difficulties, that it will be impossible to extricate you from. The real intention on my part was to make her testimony good for nothing, which is done, she having already sworn on both sides of the question. Now you expose my bond for sale, the thing

*(a)* By a plot made of the lands, it appears that this tract run nearly through the middle of *Jones's Inheritance*.

becomes public. It must and will be considered as a bribe for which she has perjured herself. To prevent any consequence of this kind, was my inducement for exacting a promise from you of keeping the thing an inviolate secret, and which you promised on your sacred honour to perform. It was a measure I disliked in every step, but your characters and interest being both connected with keeping the secret, and your most pointed promises so to do, I thought you might be trusted without risk to yourselves; but it appears as if avarice was superior to every other consideration with you, and that without looking forward at all. Would you have a little patience, the business is in such train that it cannot be long until you will get the money; but such imprudence on your part may put it off to a later period. How do you suppose, that in justice to myself I can pay any more money, when there is any uncertainty that I may never get any thing in return for it; and you will positively receive more clear profit on the final issue of this business than I shall. This suit has already cost me upwards of $400, and will yet cost me a sum I cannot calculate, besides a great loss of time. What you get, you get clear, and that without trouble or expense. Had you me in your power in such manner that you could force money from me in this way, would it not amount to absolute robbery? And do I deserve it at your hand in any respect? I have felt myself under obligations to your mother for her friendship, but if she is privy to this business, it is well calculated to cancel them all. I shall be in *Baltimore* in two or three weeks, and hope, in the mean time, you will think more prudently about this business, otherways you must make your best of it, and I shall never have any connexion with either of you again."

HANSON, Chancellor, (14th of March, 1805.) Without acting against the principles which have governed the Chancellor in several former decisions which have been affirmed on appeal, he cannot grant that which is prayed by the bill. It appears to him indeed, that no bill filed in this court praying a decree to compel a conveyance of land on an alleged contract, has been more weakly supported by the admissions and proofs in the cause. But it would be irksome to the Chancellor, and he conceives it altogether unnecessary for him to give his opinion at large, and to re-

1807.

Saunders
vs
Simpson.

mark particularly on the testimony. *Decreed,* that the bill be *dismissed,* and the *injunction* heretofore issued be dissolved.

From this decree the complainants appealed to this court, and the case was argued before CHASE, Ch. J. TILGHMAN, NICHOLSON and GANTT, J. by

*Martin, Ridgely, Shaaff, Johnson,* (Attorney-General,) and *Brice,* for the appellants *(a),* and by

*Key* and *Harper,* for the appellees.

CHASE, Ch. J. delivered the opinion of the court. It appears to the court, that the bond dated the 28th of December 1777, from *William Andrew* to *Robert Saunders,* and wife, for the specific execution of which the bill was filed, has been well and sufficiently proved. The letter written by *Andrew* to *Saunders,* dated the 20th of October 1773, shows the foundation on which the bond was executed, and exempts it from suspicion of fraud, or illicit contrivance. The bond may be considered as the fulfilment of the promise, made to the daughter, contained in that letter, and is strongly corroborated by the exhibits Z and R. The conflicting interests which prevailed in the family on the death of *Andrew,* the disputes consequent thereon, and contrivances formed by the parties to get as much of his property as could be obtained in the general scramble, have exhibited a scene of iniquity and corruption seldom brought to the view of a court of justice.

The conduct of *Saunders,* altho' highly reprehensible, in the methods adopted and pursued by him to get a confirmation of his wife's right to the lands in question, or to secure it to himself, cannot defeat or diminish the wife's equitable right and interest thus acquired by her father's letter, confirmed by the possession given pursuant thereto, and by his bond to *Saunders.*

And for these reasons the court do reverse the decree of the Chancellor, with costs to the appellants; and do decree, order and adjudge, that *Simpson* and wife, by a good and sufficient conveyance in law, do grant, convey and make over, to *Elizabeth Saunders,* and her heirs, for ever, the

*(a)* They cited 2 *Stra.* 1096. 1 *Blk. Rep.* 365; and 4 *Burr.* 2224, to show that a will might be established though the three subscribing witnesses thereto denied their handwriting.

lands called *Smith's Discovery* and *Jones's Inheritance*; and that *Simpson* and wife be perpetually enjoined from proceeding at law on the judgment in ejectment obtained by them against *Saunders* and wife.

DECREE REVERSED, &c.